Argued and submitted July 30, 2018; judgment vacated and remanded for further proceedings regarding disposition, otherwise affirmed May 13, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GABRIEL MIGUEL FOSS-VIGIL,
*Defendant-Appellant.*

Marion County Circuit Court
15CR60102; A163098

467 P3d 38

Defendant appeals a judgment of guilty except for insanity of three counts of third-degree robbery. On appeal, defendant argues that the judgment must be reversed because he was charged by information without a preliminary hearing, and he did not knowingly waive his right to such a hearing. Defendant also points out that the judgment document includes inconsistent provisions, stating both that defendant "can be adequately controlled with supervision and treatment if *** released" and that defendant is committed to the state hospital. The state acknowledges the inconsistency, and the parties agree that the correct remedy is to vacate the judgment and remand for further proceedings. *Held*: The record did not demonstrate definitively that defendant's waiver was unknowing and therefore invalid; accordingly, the Court of Appeals rejected defendant's argument that the trial court lacked jurisdiction to try him or to enter judgment because defendant did not validly waive his right to a preliminary hearing. With regard to the statements in the judgment document, the court agreed with the parties that the statements were internally inconsistent and that the appropriate disposition must be addressed by the trial court.

Judgment vacated and remanded for further proceedings regarding disposition; otherwise affirmed.

Janet A. Klapstein, Judge pro tempore.

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Judgment vacated and remanded for further proceedings regarding disposition; otherwise affirmed.

## HADLOCK, J. pro tempore

Following a stipulated-facts trial, the trial court entered a judgment finding defendant guilty except for insanity of three counts of third-degree robbery, placing him under the jurisdiction of the Oregon Health Authority (OHA) for a maximum of five years. On appeal, defendant argues that the judgment must be reversed because he was charged by information without a preliminary hearing, and he did not knowingly waive his right to such a hearing. We reject that argument for the reasons set out below. On appeal, defendant also points out that the judgment document includes inconsistent provisions, stating both that defendant "can be adequately controlled with supervision and treatment if * * * released" and that defendant is committed to the state hospital. The state acknowledges the inconsistency. The parties agree, and so do we, that the correct remedy is to vacate the judgment and remand for further proceedings.

The pertinent facts are undisputed except as noted below. Defendant was charged by information on December 31, 2015, with three counts of third-degree robbery. He was arraigned the same day and was appointed counsel at the beginning of the hearing.[1] The transcript reflects that, immediately following appointment of counsel, there was a pause in the proceedings. Following that pause, defense counsel acknowledged receipt of the information, acknowledged that defendant was truly named, and requested "standard bail," which the court set. The court then asked, "What's the State's plan vis-à-vis grand jury or [preliminary hearing]?" The prosecutor outlined some case-specific circumstances and asserted that the state "would be asking for a waiver if [defendant] will consider that at this juncture." Defense counsel asked to "check with [defendant]," the proceedings paused again, and counsel then stated that defendant was "comfortable waiving preliminary hearing" at that time.

At a January 13, 2016, hearing, defense counsel acknowledged that defendant had been "charged by way of information" and asserted that "[w]e're currently waiving

_____

[1] Two attorneys from the same office appeared on defendant's behalf over the course of the proceedings. We refer to both of those lawyers in this opinion as "defense counsel."

preliminary hearing." Counsel went on to describe "some concerns" he had that had prompted him to request funding "for a certain kind of evaluation." At a hearing later in January, counsel asserted that he had "pretty serious concerns about this client's capacity to proceed," although "[t]here's just not quite enough for [counsel] to affidavit [defendant] to the hospital." Some discussion was had about how long defendant had been held in custody because counsel did not "think it would be ethical at this point to have [defendant] try to make a decision" about whether to waive his right to be tried within 60 days.

On February 1, defendant's attorney moved for an evaluation because, based on late-January meetings with defendant, the attorney believed that defendant had a mental disease or defect that made him unable to understand the criminal proceedings and assist in his defense. Counsel averred that he had learned that defendant suffered from schizophrenia and had been receiving treatment prior to going into custody. Later that month, counsel moved for an order finding defendant unable to aid and assist, asserting that defendant had "only the vaguest understanding of the court process and his rights, even after several meetings to discuss these things."

A February 25 psychological evaluation submitted to the trial court concluded that defendant was unfit to proceed at the time of the evaluation but that, with hospitalization, there was a substantial probability that he would be restored to competency within one to three months. The psychologist, who had interviewed defendant on February 1 and 10, described defendant's long history of arrests, substance abuse, and mental-health problems. In addition, the psychologist reported that, when admitted to jail on December 30, 2015, defendant had said that "he was not compliant with his prescribed psychiatric medications" and that "he recently had 'shot up acid and heroin.'" In evaluating defendant's ability to proceed, the psychologist noted that defendant had "some factual understanding of legal procedure and case-specific information," including "the essential procedures of a formal criminal trial," but could not "consistently and fluidly process and relay this information." The psychologist further reported that defendant's

understanding was "impaired by his disjointed, illogical, and concrete thinking," leaving him unable to "rationally participate in the decision-making process in order to make a knowing and intelligent decision about how to resolve his case." The trial court ruled on February 26, 2016, that defendant was unable to aid and assist in his own defense, and it committed defendant to the state hospital for treatment.

In May 2016, a hearing was held at which defense counsel asserted that defendant was "currently able to aid and assist." Defendant subsequently waived his right to jury trial, and trial was set in August 2016. At the beginning of the August proceedings, the trial court characterized the psychological evaluation as "apparently conclud[ing] *** that at an early point in time [defendant] was unable to aid" and "that he [had] lacked the capacity to conform his conduct to the requirements of law, due to a mental disease or defect." The court noted that the state had stipulated that the psychological report reflected that defendant "qualifies for a finding of *** guilty but insane"; defense counsel then stated that defendant was asking the court to find him "guilty except insane in this case and to sign a judgment committing him to the custody of the state hospital until such time as they see fit to release him to the community." Based on stipulated facts, the court then found defendant guilty except for insanity of the three counts of robbery and committed him to the state hospital. The court explained to defendant that he was "going to be at the state hospital for a period of time," noting that defendant had already "been there for a while" and that being at the hospital was "probably what's best for [him]."

The court signed a judgment reflecting its verdict, which was based in part on the court's finding that, "as a result of mental disease or defect at the time of engaging in criminal conduct, the defendant lacked substantial capacity either to appreciate the criminality of the conduct or to conform [his] conduct to the requirements of law." The judgment also included this provision: "That although the defendant is affected by a mental disease or defect which, when active, renders him a substantial danger to others, he can be adequately controlled with supervision and treatment

if [he] were released, and such supervision and treatment are available[.]" Notwithstanding that provision—and in keeping with its oral statements about returning defendant to the state hospital—the court ordered that defendant be placed under OHA jurisdiction for a maximum of five years and that he be committed to the state hospital.

On appeal, defendant argues that the judgment must be reversed because he "did not knowingly or intentionally waive indictment or preliminary hearing." Defendant contends that "the absence of an indictment, preliminary hearing, or valid waiver renders a judgment void." Defendant acknowledges that a criminal defendant may waive the right to indictment or preliminary hearing, but asserts that, in this case, "[t]he record does not establish" a knowing and intelligent waiver. Acknowledging that defense counsel twice told the court that defendant was waiving his right to preliminary hearing, defendant argues that those waivers were defective because, at the time they were made, "defendant was unable to understand the nature of the proceedings, unable to assist and cooperate with his counsel, and unable to participate in his defense." He also asserts that "the record does not reflect whether defendant knew what the right to a preliminary hearing entailed" because the court did not explain that right to him. Accordingly, defendant asserts, "the trial court lacked jurisdiction to enter a judgment finding him guilty except for insanity of three felonies," and the judgment that the court did enter is void. Alternatively, defendant asks us to address his argument as establishing that the trial court plainly erred by entering the judgment, even if the lack of a waiver does not constitute a jurisdictional defect.

In response, the state first asserts that the record does not establish that the waivers of the right to preliminary hearing (made through counsel) were invalid at the time they were made, even though the court later found defendant unable to aid and assist. The state also argues that the law does not support defendant's contention that, in the absence of a criminal defendant's valid waiver of indictment or preliminary hearing, a trial court plainly errs by proceeding to trial or entering a judgment of conviction.

Both parties' arguments reflect those made by the parties in *State v. Keys*, 302 Or App 514, 460 P3d 1020 (2020), which we decided after the parties filed their briefs in this case. In *Keys*, the defendant had been "charged by information in the absence of a preliminary hearing and did not knowingly waive his right to preliminary hearing or indictment." *Id*. at 526. On appeal, the defendant argued that the lack of indictment, preliminary hearing, or valid waiver meant that the resulting judgment of conviction was void. *Id*. at 515. Relying largely on *Huffman v. Alexander*, 197 Or 283, 251 P2d 87 (1952), *reh'g den*, 197 Or 283, 253 P2d 289 (1953), we held that "a circuit court obtains jurisdiction to *try* or *convict* a defendant in a felony case only upon issuance of an indictment, an information supported by a probable-cause determination made following preliminary hearing, or the defendant's knowing waiver of indictment or preliminary hearing." *Keys*, 302 Or App at 523-24 (emphases in original). Consequently, "in the absence of indictment, preliminary hearing, or waiver, the circuit court lacks jurisdiction to try the defendant and any judgment rendered in that case is void." *Id*. at 524. Given the absence of indictment, preliminary hearing, or a knowing waiver by the *Keys* defendant, we reversed the judgment of conviction. *Id*. at 526-27.

Although the circumstances here and in *Keys* might at first glance appear analogous, the records in the two cases differ in a critical way. The record in *Keys* was unusual in that it established affirmatively that the defendant had not knowingly waived the right to indictment or preliminary hearing, through counsel or otherwise. Although the defendant's lawyer purported to waive that right on the defendant's behalf, the transcript established that the lawyer had not consulted with the defendant before doing so; indeed, the two individuals had just met and had not had any opportunity for private conversation. *See id*. at 515 (quoting transcript). Unsurprisingly, given that circumstance, the state did not contend in *Keys* that counsel's statement to the court communicated her client's knowing waiver of his right to preliminary hearing. *Id*. at 516. Accordingly, we based our analysis "on an understanding that counsel's purported waiver did not constitute a 'knowing' waiver by

defendant for purposes of Article VII (Amended), section 5." *Id*. at 517.

Here, the record does not establish the absence of a knowing waiver of preliminary hearing. To the contrary, the record suggests (to the extent that a record can reflect the content of a private conversation) that counsel and defendant discussed that specific topic. During arraignment, the proceedings paused twice while counsel consulted privately with defendant. The second of those conversations occurred after the court inquired about "the State's plan vis-à-vis grand jury or [preliminary hearing]" and the prosecutor responded that the state was "asking for a waiver." Defense counsel then asked to "check with" defendant, the proceedings paused, and then defense counsel stated that defendant was "comfortable waiving preliminary hearing" at that time. Unlike in *Keys*, the record suggests that counsel was communicating defendant's own waiver to the court; the record does not establish (as it did in *Keys*) that the lawyer was purporting to waive a right that she had not discussed with her client. Counsel again stated, at a hearing two weeks after arraignment, that defendant was waiving preliminary hearing.

Nonetheless, defendant argues that the waivers communicated through counsel were invalid. Defendant's primary argument is that his waivers could not have been knowing because of the mental-health problems that later led to a determination that he was not able to aid and assist in his own defense. Defendant points to evidence of his longstanding mental-health challenges, his self-report that he had not been compliant with medications (and had used drugs) on the day he was arrested, and his lawyer's early concerns about defendant's mental health. He concludes that the record establishes that that he was incapable of knowingly waiving a constitutional right at either of the times that counsel communicated the waiver.

We are not persuaded. Although the record includes information that could support a finding that defendant did not understand the meaning or significance of his waiver of the right to preliminary hearing, the record does not *compel* such a finding. Indeed, the record also includes information

that points in the opposite direction. For example, defense counsel consulted with defendant before communicating his waiver on that point. A factfinder could infer that conscientious counsel would not have been willing to communicate defendant's waiver of the right to preliminary hearing if counsel had not believed that defendant understood the right he was waiving. Moreover, the psychologist's evaluation includes statements about defendant's ability to understand some aspects of criminal proceedings and the charges against him.

In short, the record does not demonstrate definitively that defendant's waiver was unknowing and therefore invalid. Defendant might be able to establish the invalidity of his waiver in a different proceeding, on a record developed specifically to address that point, but he cannot do it on the record presently before us. *Cf. Huffman*, 197 Or at 322 (holding, based on then-existing principles of habeas corpus, that the petitioner should have had an opportunity to establish in a habeas corpus proceeding that his waiver of indictment in the underlying criminal case had been invalid); *Myers v. Howton*, 296 Or App 500, 439 P3d 472, *rev den*, 365 Or 657 (2019) (appeal in a post-conviction proceeding in which the petitioner alleged that her waiver of the right to a jury trial in the underlying criminal proceeding had been involuntary).

Implicitly relying on the fact that defense counsel's discussions with defendant were private and not transcribed for the record, defendant also contends that "the record does not reflect whether defendant knew what the right to a preliminary hearing entailed" when counsel told the court that defendant was waiving that right. Defendant suggests that the trial court was required to, and did not, *itself* inform defendant about the meaning of the right he was relinquishing and confirm that defendant understood the nature of that right. Absent such actions, defendant asserts, the waiver was invalid and the resulting conviction void. However, defendant has not directed us to any authority supporting that argument, and we reject the undeveloped argument without further discussion.

In sum, we reject defendant's argument that the trial court lacked jurisdiction to try him or to enter judgment

because he did not validly waive his right to preliminary hearing. We also reject, without further discussion, defendant's argument that the trial court plainly erred by proceeding to trial or by entering the judgment under the circumstances.

We turn to the internal inconsistency in the judgment document. After a defendant is found guilty except for insanity, the trial court must "order a disposition" as provided by statute. ORS 161.325(1). Several kinds of disposition are possible. As pertinent here, if the trial court finds that the defendant "is affected by a qualifying mental disorder and presents a substantial danger to others," the court may order either that the defendant be committed to a state hospital *or*, if the court finds that the defendant "can be adequately controlled with supervision and treatment if conditionally released and that necessary supervision and treatment are available, the court shall order the [defendant] conditionally released." ORS 161.327(1)(a), (b). Here, the trial court found defendant guilty except for insanity and announced in court that defendant would be committed to the state hospital. In keeping with that ruling, the judgment document orders that "defendant be placed under the jurisdiction of the [OHA] for care, custody and treatment while hospitalized" and that defendant is "committed to the custody of the state mental hospital" designated by OHA. That disposition is the one authorized by ORS 161.327(1)(a). However, the judgment document also includes a finding that defendant "can be adequately controlled with supervision and treatment if [he] were released, and such supervision and treatment are available," which ordinarily would lead to a disposition of conditional release under ORS 161.327(1)(b). Thus, the dispositional provisions of the judgment document are internally inconsistent.

Defendant initially argued on appeal that the finding in the judgment regarding supervision and treatment required that he be conditionally released, notwithstanding the court's announcement that it was committing him to the state hospital and notwithstanding that the judgment also includes a provision committing him to the hospital. Defendant asked us to vacate the judgment and remand to the trial court with an order requiring that court to enter a

judgment providing for conditional release. In response, the state acknowledged the inconsistency in the judgment, but suggested that the "supervision and treatment" finding may have been "included in the judgment by mistake," given the lack of any other indication in the record that the trial court intended that defendant be released. The state therefore urged us to vacate the judgment and remand to the trial court for further proceedings, presumably to include entry of a new judgment that does not include inconsistent dispositional provisions. At oral argument, defendant acknowledged that a remand for further proceedings is the appropriate remedy.

We agree with the parties that, in light of the inconsistency in the judgment, the appropriate remedy is to vacate the judgment and remand for further proceedings. Because we have rejected defendant's challenges to the judgment insofar as it encompasses a determination of guilt except for insanity, the remand is solely for the purposes of addressing the appropriate disposition.

Judgment vacated and remanded for further proceedings regarding disposition; otherwise affirmed.