No. 216          March 12, 2025          783

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
DEAN CHRISTIAN BOETTCHER,
*Defendant-Appellant.*

Clackamas County Circuit Court
16CR67746; A172854

Katherine E. Weber, Judge.

Argued and submitted April 12, 2024.

George W. Kelly filed the opening brief.

Frances J. Gray argued the cause and filed the reply brief for appellant.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Dean Christian Boettcher filed the supplemental briefs *pro se.*

Before Shorr, Presiding Judge, Lagesen, Chief Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Defendant was convicted of one count of murder under ORS 163.115 (2016), *amended by* Or Laws 2019 ch 634, § 28 (2019).[1] On appeal, defendant raises seven assignments of error and numerous *pro se* arguments. For the reasons that follow, we affirm.

In his first assignment of error, defendant contends that the trial court erred in denying his motion to dismiss on the ground that the trial court failed to follow proper procedures at his arraignment. Specifically, defendant contends that the trial court erred in denying defendant's motion to dismiss because defendant (1) appeared at his arraignment without an attorney and (2) was not handed a copy of the indictment nor read the indictment in violation of several statutes governing arraignments.[2]

ORS 135.010 provides that a defendant is to be arraigned "[w]hen the accusatory instrument has been filed * * * or as soon thereafter as the defendant may be arrested[.]" "The arraignment consists of reading the accusatory instrument to the defendant, causing delivery to the defendant of a copy thereof * * * [and] asking the defendant how the defendant pleads to the charge." ORS 135.020.

Pursuant to ORS 135.380(2), a defendant may plead guilty at "arraignment or any time thereafter." However, under ORS 135.380(3), if a defendant elects not to enter a plea, "the defendant shall be considered to have entered a plea of not guilty." And under ORS 131.035, no error in the form or mode legally prescribed for a criminal proceeding "renders it invalid, unless it has prejudiced the defendant in respect to a substantial right."

The state concedes—and we agree—that after defendant's arrest on the murder charge, he appeared at an arraignment where certain arraignment procedures did not take place. However, even assuming defendant was

---

[1] ORS 163.115 has been amended since defendant's arrest and prosecution. Those amendments do not affect our analysis.

[2] We note that in another opinion recently issued, *State v. Pederson*, 338 Or App 362, ___ P3d ___ (2025), we addressed the constitutional right to counsel at an arraignment. However, defendant does not raise any constitutional arguments in this case, so we do not consider them.

unrepresented,[3] defendant has not shown that any error at his arraignment caused him prejudice warranting dismissal. *See Barnes v. Cupp*, 44 Or App 533, 536-37, 606 P2d 664, *rev den*, 289 Or 587 (1980), *cert den*, 449 US 1088 (1981) (concluding that "[n]oncompliance with the arraignment statute * * * does not automatically result in a denial of due process").

To the contrary, as the trial court found, the record demonstrates that defendant was aware of the charge against him, had been previously informed of his *Miranda* rights, and that he had read the search warrant.[4] In a recorded jail call made after the arraignment, defendant discussed what happened and explained that "the indictment was for one count of murder" and noted that he needed to confer with a lawyer before he could intelligently enter a plea. Defendant was appointed counsel four days later, and the state promptly provided discovery to the defense which included a copy of the indictment. Defendant said nothing incriminating during the arraignment and the trial court did not take a plea.  Defendant eventually pleaded not guilty and went to trial to oppose the murder charge years later. In sum, defendant was aware of the charge, his rights to counsel and to silence, and he understood the importance of his right to counsel. Thus, he failed to demonstrate any prejudice, and the trial court did not err in denying his motion to dismiss.

In his second assignment of error, defendant contends that the trial court abused its discretion in denying his September 20, 2019, motion for a continuance because he needed additional time for a defense expert to determine whether the state toxicologists had followed proper

---

[3] Despite defendant's contention that he was unrepresented at the arraignment, evidence in the record indicates that an attorney was present who conferred with defendant and waived reading of the indictment on defendant's behalf.

[4] Defendant suggests that he was not aware of the nature of the charge against him because the statute under which he was arraigned, ORS 163.115, states the crime of second-degree murder, and he was only informed that he had been charged with murder. But in 2016, when defendant was committed the crime, that statute only set forth the crime of murder. *See* ORS 163.115 (2016), *amended by* Or Laws 2019 ch 634, § 28 (2019).  That statute was amended to create the new crime of second-degree murder in 2019, three years after defendant committed the charged offense and was arraigned. *Id.* Thus, defendant was correctly informed of the charge against him.

procedures and protocols when they determined that the victim did not have any intoxicants in his blood stream when he died.

Whether the trial court's denial of a defendant's motion for continuance was an abuse of discretion "depends on the particular circumstances of the case and the reasons presented to the court at the time the request is denied." *State v. Ferraro*, 264 Or App 271, 281, 331 P3d 1086 (2014). An abuse of discretion occurs when the court's decision is "not justified by and clearly against the evidence and reason." *Combs v. Baldwin*, 161 Or App 270, 276, 984 P2d 366 (1999) (citing *Lutz v. State of Oregon*, 130 Or App 278, 285, 881 P2d 171 (1994)).

Here, defendant argues that he needed additional time for a defense expert to review the testing procedures used by the state toxicologist to challenge the test results indicating that the victim was not under the influence of any substances. However, it was not beyond reason for the trial court to decline to continue the trial on that basis. As the state points out, at the time of defendant's motion, the case had already been pending for close to three years. In a discovery request filed in June 2019, defendant included a passage requesting "all chemical testing performed by the state herein to date, the methodology and testing procedures used and the protocols of the testing processes." Defendant received that information from the state on September 17, 2019. However, it is undisputed that the state provided defendant the results—indicating that the victim was not under the influence when he died—long before that. Yet, defendant waited until June 2019 to make a vague request for testing process information.

Moreover, defendant cannot show that he was prejudiced by the denial of his motion for a continuance, and we will not overturn the denial of such a motion unless the defendant demonstrates prejudice. *See State ex rel Dept. of Human Services v. K. C.,* 227 Or App 216, 230, 205 P3d 28, *rev den*, 346 Or 257, 210 P3d 905 (2009) (concluding that the juvenile's court's denial of the mother's motion for a continuance was not prejudicial because the substance of the doctor's testimony was highly speculative). Here, defendant has not demonstrated

that he suffered prejudice as a result of the trial court's denial of his motion. Defendant states only that "had defendant been able to challenge the accuracy of the test, it would have made it more likely that the jury believed defendant rather than [an eyewitness]." But he offers no explanation as to why. Given the age of the case and the absence of any non-speculative showing that defendant would be disadvantaged, the trial court did not abuse its discretion.

In defendant's third assignment of error, he contends that the trial court abused its discretion when it denied his October 21, 2019, motion to continue because he needed additional time to retain an expert to review recently discovered evidence of the victim's mental health problems.

During defendant's trial, after *voir dire* was completed, the state informed defendant that it had recently learned from the victim's mother that the victim suffered from a series of physical ailments and had been receiving disability benefits. Upon learning this information, defendant asked for and was granted a continuance until October 15, 2019. On October 14, the parties appeared before the court and reported that the records indicated that the victim had self-reported at a detox facility that he suffered from bipolar disorder and PTSD.

Thereafter, on October 21, 2019, defendant again moved for a continuance, arguing that the continuance was necessary because the records suggested that the victim had been repeatedly hospitalized for bipolar disorder and had been diagnosed with antisocial personality disorder. Defendant asserted that, as a result of this new information, the defense needed time to further investigate the victim's mental health diagnoses and obtain an expert who could potentially testify. At the subsequent hearing, the trial court denied defendant's motion given the age of the case, ruling that the victim's medical history had been "readily accessible" all along and that the defense could have obtained it far earlier through timely investigation in support of defendant's self-defense claim.[5]

---

[5] Specifically, the court stated:

"As previously indicated, this is not a discovery violation by the State. All the information that the parties have obtained in the past ten days could

Defendant now challenges that ruling, arguing that the trial court abused its discretion because defendant did not have a reason to believe that potentially helpful information for his self-defense claim existed in the victim's mental health records until the victim's mother informed the state about the victim's disabled status.

However, defendant has not meaningfully addressed the trial court's conclusion that the victim's medical records were readily available and that there was no reason for defendant not to have sought them while investigating his self-defense claim.

As the trial court noted, there was no discovery violation by the state, and defendant had three years between the indictment and the trial to investigate aspects of the victim— who was known by defendant to have resided in a home for those recovering from addiction—that could have assisted defendant in his self-defense theory. Given defendant's late realization that he wanted to investigate the victim's mental health, the trial court could reasonably conclude that delaying the trial after the jury was selected and sworn was unwarranted, particularly given the age of the case and the history of defense delays. *See State v. Hug*, 186 Or App 569, 572-73, 64 P3d 1173, *rev den*, 335 Or 510 (2003) (trial court may consider "the need of the public and all defendants for expedition in the court system" in deciding whether to grant a continuance request).

In any event, any error was harmless because defendant stabbed the unarmed victim approximately 19 times, eyewitnesses saw defendant initiate the assault, and

---

easily have been obtained through investigation into the defense's self-defense claim.

"It's all been very easily accessible for both parties, as shown by the records that have obtained over those past ten days. And it's not a basis to reset the case.

"Furthermore is the speedy trial issue. This is a very old case and there have been repeated requests to reset this case made by the defense with counsel.

"There have been repeated waivers of speedy trial and *** despite all those previous knowing, voluntary and intelligent waivers, the defense filed and argued a lengthy motion to dismiss based on the lack of speedy trial in this case. As a result, given the age of the case and the history of the case, the motion to *** reset must be denied."

defendant made a series of incriminating statements. Given that evidence, there is little reason to suggest that testimony about the victim's mental health diagnoses would have affected the verdict. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (Oregon's constitutional test for affirmance despite error consists of a single inquiry: "Is there little likelihood that the particular error affected the verdict?").

In defendant's fourth, fifth, and sixth assignments of error, he contends that the trial court erred by limiting the scope of his inquiry into the witness' drug treatment and mental health histories to the 20-day period of time surrounding the charged incident. Specifically, defendant contends that the complexity of the case required defense counsel to thoroughly investigate the background of the witnesses that were present in the residence at the time of the incident and that the request he made for their medical information over "the last ten years" was reasonable and appropriate.

ORS 136.580 and ORS 136.567 authorize the court to issue subpoenas for witnesses and for those witnesses to bring material with them to a proceeding "at which the material may be called for as evidence." *State v. Cartwright*, 336 Or 408,

415, 85 P3d 305 (2004). In exercising its authority, the trial court cannot violate a criminal defendant's right under the subpoena statutes to compel witnesses to attend trial and to produce documentary materials. *Id.* at 417-18. When a party subpoenas a witness to bring material to the courtroom so that it is available for trial, the trial court must enforce the subpoena "unless it is clear that the material or testimony has no potential use at trial." *State v. Bray*, 363 Or 226, 250, 422 P3d 250 (2018) (citing *Cartwright*, 336 Or at 419) (emphasis omitted).

However, a defendant's right to use a subpoena to produce evidence at trial is constrained by two primary limitations: relevance and privilege. *See State v. Bray*, 281 Or App 584, 612, 383 P3d 883 (2016), *aff'd,* 363 Or 226 (2018). And here, defendant has not shown that the witnesses' treatment and mental health histories outside the window prescribed

by the court would reveal any information relevant for their cross-examination. Defendant argues that the ability of an individual to accurately recall or describe events cannot be accurately captured in a "20-day snapshot." But defendant does not provide a non-speculative reason as to why. The trial court correctly understood that information that could indicate the witnesses' mental health or drug use status *at the time* of the incident could reveal potential impeachment information. But the court did not err in concluding that defendant had failed to meet a preliminary threshold of relevance regarding the witnesses' ten-year history.

Finally, defendant's seventh assignment of error challenges the admission of photographs of drug paraphernalia in defendant's bedroom, arguing that the foundation for their admission was inadequate because the officer who took the photos could not confirm that the items belonged to defendant or his roommate. Defendant also argues that the photographs were irrelevant, inadmissible character evidence, and unduly prejudicial.

The question of foundation under that rule depends, first and foremost, on the particular purpose for which the party is offering the evidence. That is, the rule requires that the evidence support a finding that the exhibit is "what its proponent claims." OEC 901(1). In this case, the state offered the photos to show that they fairly and accurately depicted defendant's bedroom and the items found in the room when the officer searched it. The state elicited testimony from the officer that the photograph was what it purported to be—*i.e.*, the defendant's bedroom. To be sure, the detective conceded that he could not determine who owned the items. But that did not render the foundation inadequate. At that point, the state was free to ask the detective—based on his training and experience—whether the items appeared to be drugs and drug paraphernalia. To the extent that defendant disputed whether the items belonged to him, he was free to argue that inference to the jury. But the detective's inability to establish ownership did not render the foundation for admission of the photographs inadequate.

As to defendant's relevancy argument, the photographs were at least relevant for the limited purpose of

corroborating the testimony of a witness who stated that he was concerned about defendant's drug use, and defendant does not assign error to the admission of that testimony. Further, defendant's contention that the evidence was unduly prejudicial under OEC 403 is unpersuasive. As defendant himself conceded in his opening statement to the jury, "you're going to hear some issues whether or not drugs were involved in this particular scenario on the part of [the victim] or on the part of my client." Given the physical evidence, the eyewitness evidence, and defendant's own incriminating statements and behavior, admission of the photographs was not unduly prejudicial. The trial court did not err.

Turning to petitioner's many undeveloped arguments, we first note that most of petitioner's assignments of error do not comply with ORAP 5.45(2) and (3). That is, they do not separately identify and address the specific ruling of the trial court that is being challenged, which complicates our ability to analyze the arguments he raises. Nevertheless, we have attempted to carefully consider each and every one of petitioner's arguments. But a recurring problem is that many of petitioner's arguments fail to specifically identify error in the court's ruling. Often the arguments simply refer to various portions of the record while ignoring the trial court's ruling entirely, disregarding the standard of review, and framing the issues as if we were exercising *de novo* review. We reject such arguments as undeveloped. *See, e.g.*, *Waldorf v. Premo*, 301 Or App 572, 584, 457 P3d 298 (2019), *rev den*, 366 Or 451 (2020) (not addressing undeveloped argument); *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 701 n 2, 64 P3d 1193, *adh'd to as clarified*, 187 Or App 472 (2003) (rejecting to address "conclusory sentences" requesting a remand and new trial); ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged.").

Affirmed.